UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| KATHY FORD | CIVIL ACTION NO. 14-2617 |
| VERSUS | JUDGE ROBERT G. JAMES |
| AMETHYST CONSTRUCTION, INC. | MAG. JUDGE KAREN L. HAYES |

<u>RULING</u>

Kathy Ford ("Ford") brings this gender discrimination and retaliation suit against Amethyst Construction, Inc. ("Amethyst") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). Pending before the Court is Amethyst's Motion for Summary Judgment. [Doc. No. 13]. For the following reasons, the motion is GRANTED.

**I.    FACTS AND PROCEDURAL HISTORY**

Unless otherwise noted, the following facts are undisputed.

Amethyst is a civil construction, engineering, and design company providing services for numerous construction projects throughout Northeastern Louisiana. Amethyst hired Ford, a woman, as a truck driver on June 27, 2011. Specifically, Amethyst hired Ford to drive a tandem-axle dump truck. At the time Amethyst hired her, Ford had approximately five years of experience driving 18-wheelers in an over-the-road capacity.

Despite beginning her employment as a truck driver, Ford wanted to learn to operate construction equipment. According to Ford, the Employee Handbook promised construction equipment training, and she requested this training on multiple occasions. However, no Amethyst employees were trained to operate construction equipment during the term of Ford's employment,

nor did Amethyst have an open position for construction equipment operators during Ford's employment. Ford did not apply for any other position during her employment with Amethyst.

Ford had two supervisors at Amethyst: Ernest Morris ("Morris") and Jarod Jones ("Jones"). Jones supervised Ford for the month leading up to her termination. The record shows that Jones and Ford had a rocky relationship. According to an affidavit submitted by Ford's co-worker, Jones stated that he would do "whatever it takes to get rid of her." [Doc. No. 15-2, Jiles Affidavit]. Jones also allegedly said, "we ain't having a woman to be a truck driver." *Id*. On another occasion, after an employee made an error, Jones purportedly stated that if Ford had made the error, he would have terminated her on the spot. [Doc. No. 15-5, Ford Depo]. Finally, when Ford asked to drive one of the larger trucks, Jones refused, allegedly stating that Ford "did not have enough in the rear-end to handle that job." [Doc. No. 15-4, Ford Affidavit]. Ford alleges that she complained to both Jones and Morris concerning sexual discrimination that she experienced within the company. She does not state when she complained.

On October 14, 2011, Ford spoke to a Ouachita Parish Sheriff's deputy after an apparent burglary of an Amethyst employee's vehicle in the parking lot. Ford speculated that a fellow Amethyst employee may have committed the burglary. The Sheriff's Department investigated Ford's suspicion, but the investigation proved unfruitful. Amethyst also looked into Ford's report with the Sheriff's Department. Finding Ford's statements concerning her fellow employee to be false and wrongfully asserted in violation of Amethyst's rules, Amethyst issued an Employee Warning Notice reprimanding her for the stated infraction. The notice stated that Amethyst would terminate Ford if she violated company's policies and rules in the future.

On December 13, 2011, Ford was driving a dump truck from a job site in Sterlington,

Louisiana, to an asphalt plant in Ruston. She made three round trips and passed through Farmerville, Louisiana. On that day, Amethyst contends that there was a complaint of an Amethyst dump truck being driven erratically and forcing other motorists off the road outside of Farmerville. Chris Snell ("Snell"), a volunteer firefighter with the Farmerville Fire Department, called Amethyst, through its General Superintendent of Outside Operations, Robbie Lawson ("Lawson"), to alert Amethyst of the complaint. [Doc. No. 13-9, Snell Affidavit]. Amethyst alleges that word of the complaint eventually reached Ben Holdman ("Holdman"), the supervisor in charge of hiring and firing decisions. Upon learning of the situation from Jones, and before learning the driver's identity, Holdman claims that he directed Jones to identify and fire the driver. [Doc. No. 13-1, Holdman Affidavit].

Amethyst alleges that it learned that Ford had passed through Farmerville around the time the complaints were made. According to Amethyst, the Union Parish Sheriff's Office confirmed that Ford had been pulled over. In support, Amethyst introduces an authenticated Incident Report from the Union Parish Sheriff's Office ("Incident Report"). The Incident Report clearly indicates that Ford was pulled over for erratic driving on December 13, 2011. [Doc. No. 13-11, Exh. A, Incident Report]. After learning that Ford was the complained-of driver, Jones fired her.[1] Shortly before terminating her, Ford's co-worker claims to have heard Jones say, "bring your truck to the yard

---

[1] Ford objects to the Court considering the Incident Report, arguing that it is inadmissible hearsay. The Court disagrees. Under Federal Rule of Evidence 803(8), hearsay is admissible if contained in a record or statement of a public office which sets out "in a civil case...factual findings from a legally authorized investigation," and if the opponent of the report fails to show the source of information or other circumstances indicate a lack of trustworthiness. FED. R. EVID. 803(8)(A)(iii); FED. R. EVID. 803(8)(B). Police reports have been held to fall under the public records exception. *See Bedford Internet Office Space, LLC v. Travelers Cas. Ins. Co.*, 41 F.Supp.3d 535, 544 (N.D. Tex. 2014) ("Police reports are admissible, at least in part, under an exception to the hearsay rule as public records that set forth factual findings from a legally authorized investigation"). Further, there is no evidence that the source of information contained in the report or other circumstances indicate a lack of trustworthiness.

because you're one fired ass." [Doc. No. 15-2, Jiles Affidavit].

According to Ford, however, the termination was related to her gender. Initially, she claims she did not drive erratically at all; rather, a male employee drove the dump truck through Farmerville, and she improperly shouldered the blame. Five months later, Ford told an EEOC investigator that Amethyst concocted the entire story to rid itself of her. During this suit, Ford circled back to her original theory: a male employee drove erratically through Farmerville–not her. Recently, Ford again claimed Amethyst made up the entire incident. She denies being pulled over by a police officer or given any verbal warning. To support this assertion, Ford introduces an affidavit from Misty Cunningham ("Cunningham"). Cunningham claims that she drove behind Ford on the day of the incident and did not notice Ford driving erratically. [Doc. No. 15-6, Cunningham Affidavit]. Ford also notes that the incident report describes her as traveling east; however, Ford claims she was traveling west.

On April 3, 2012, Ford filed an Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire, accusing Amethyst of gender discrimination and retaliation for protected activity. She filed a formal charge of discrimination against Amethyst on June 13, 2012. The EEOC investigated her allegations and dismissed the charge. The EEOC issued a right-to-sue letter on December 28, 2012; however, it appears that Ford did not receive the letter until July of 2014.

Ford filed suit on August 29, 2014. [Doc. No. 1]. The Complaint lists the following adverse actions allegedly taken against Ford because of her gender and in retaliation for engaging in protected activity under Title VII: (1) Amethyst failed to promote Ford; (2) Amethyst precluded Ford from engaging in on-the-job training for better, higher-paying positions despite assurances in the employee handbook; (3) Amethyst refused to allow Ford to drive a larger truck despite her requests;

(4) Amethyst issued Ford a written warning for "Violation of Company Policy" for providing a law enforcement officer with false information; (5) Amethyst fired Ford for driving in a reckless matter even though, according to Ford, Amethyst was aware that Ford did not drive the truck. [Doc. No. 1].

Amethyst filed this Motion for Summary Judgment [Doc. No. 13] on January 8, 2016. Ford then filed a memorandum in opposition. [Doc. No. 15]. Amethyst filed a reply. [Doc. No. 16]. The matter is ripe.

## II.     LAW AND ANALYSIS

### A.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19

F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

"Only disputes over facts that might affect the outcome of the suit under governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*.

  **B. Title VII Framework and Analysis**

Under Title VII, discrimination can be shown through direct or circumstantial evidence. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003). Here, Ford attempts to prove discrimination through circumstantial evidence. Accordingly, she relies on the familiar burden-shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-04 (1973). The plaintiff must first create a presumption of discrimination by making out a *prima facie* case. *Lopez v. Kempthorne*, 684 F.Supp.2d 827, 854 (S.D. Tex. 2010). The burden then shifts to the defendant to produce evidence that "the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (citations omitted). If the defendant meets his burden, the presumption of discrimination dissipates. *Wallace v. Methodist Hosp. System*, 271 F.3d 212, 219 (5th Cir. 2001) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). The burden then shifts back to the plaintiff to introduce

evidence sufficient for the finder of fact to determine the defendant discriminated against her because of her protected status. *Id*. (citing *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511-12 (1993)).

To meet that burden, the plaintiff must put forth evidence indicating the proffered nondiscriminatory reason is a pretext for discrimination. *See Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). Generally, a plaintiff may establish pretext either through evidence of disparate treatment or by a showing, coupled with a satisfactory *prima facie* case, that the employer's proffered reason is false or unworthy of credence. *Reeves*, 530 U.S. at 148. "However, such a showing will not always be enough to prevent summary judgment, because there will be cases where a plaintiff has both established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, yet 'no rational factfinder could conclude that the action was discriminatory.'" *Price*, 283 F.3d at 720 (quoting *Reeves*, U.S. 530 at 133).

What matters at this juncture is the employer's motive. Even if the employer takes adverse employment actions against the employee based on inaccurate information, if the employer believed the information was true, the proffered reason is not pretext for a more sinister motive. *See Ellison v. Darden Rest., Inc.*, 52 F.Supp.2d 747, 752 (S.D. Miss. 1999). ("The Fifth Circuit has made clear that the relevant inquiry is whether the employer believed the allegation in good faith and whether the discharge decision was based on that belief.") (citing *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 (5th Cir. 1993)).

Finally, when the same actor that hired or promoted the employee at issue is also responsible for the adverse employment action, there is a presumption that discriminatory animus did not affect the adverse decision. *See Spears v. Patterson UTI Drilling Co.*, 337 Fed. App'x. 416, 421-22 (5th

Cir. 2009). The presumption is refutable. *Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 546 (5th Cir. 1996).

### a. Discriminatory Discharge Claim

Ford alleges that Amethyst terminated her because of her gender. To make out a *prima facie* claim of discriminatory discharge, she must show (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was discharged; and (4) she was replaced by someone outside the protected class. *See Singh v. Shoney's, Inc.*, 64 F.3d 217, 218 (5th Cir. 1995); (citing *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990); *Norris v. Hartmax Specialty Stores*, 913 F.2d 253, 254 (5th Cir. 1990)).

Ford satisfies the first three elements, but it is unclear whether Amethyst replaced her with a man; therefore, Ford fails to make out a *prima facie* case under the traditional analysis. However, Title VII jurisprudence provides multiple variations of the *prima facie* case. In work-rule violation cases "a Title VII plaintiff may [also] establish a prima facie case by showing 'either that [she] did not violate the rule or that, if [she] did, men who engaged in similar acts were not punished similarly.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)). If the plaintiff seeks to prove she suffered disparate punishment, she must show that the employees who were treated more favorably were in circumstances nearly identical to hers. *See Mayberry*, 55 F.3d at 1090 (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 95 (5th Cir. 1991).

Ford can at least raise a genuine issue of material fact under the work-rule violation *prima facie* standard which allows an employee to state a *prima facie* claim by showing she did not violate the work rule. Amethyst contends that Ford drove erratically in violation of its company policy.

However, Ford has testified that she never drove erratically. She also introduces Cunningham's affidavit which tends to support her testimony. Finally, she points to a supposed discrepancy in the incident report: the report stated that she was driving east, but Ford maintains that she had been traveling west.

Turning to the second prong of the *McDonnell-Douglas* framework, the burden shifts to Amethyst to proffer a legitimate, nondiscriminatory reason for the reprimand and subsequent termination. "This burden is one of production, not persuasion." *Reeves*, 530 U.S. at 143 (2000). Amethyst claims it reprimanded and fired Ford because it learned that she was driving recklessly which violated the company's policies. This reason suffices under Title VII. *See Moyer v. Jos. A. Bank Clothiers, Inc.*, 11-3076, 2013 WL 4434901 at *8 (N.D. Tex. Aug. 13, 2013) ("An employee's violation of a workrule is a legitimate nondiscriminatory reason for termination.") (citing *Mayberry*, 55 F.3d at 1091; *Rochon v. Exxon Corp.*, 203 F.3d 827, at *3 (5th Cir. 1999) (per curiam)). The burden shifts to Ford one last time to show the reason is pretext for discrimination.

In order to meet that burden, Ford cites comments made by Jones and others employees; notes inconsistencies in the allegation that Ford drove recklessly in or around Farmerville; and posits that a fellow co-worker, Bob, committed a more serious violation without reprimand or termination.

Amethyst counters that the issue is not whether the facts underlying the reckless driving allegation are objectively correct; the issue is whether Amethyst had a good faith belief that Ford drove recklessly. Further, Amethyst contends that Bob and Ford were not similarly situated; any comments made by coworkers are too speculative to create a fact issue; and, likewise, Jones' comments do not show pretext because he was not a decision maker.

The Court agrees with Amethyst for the following reasons. First, errors underlying the police

9

report or accusation that Ford drove recklessly through Farmerville are immaterial so long as the decision maker had a good faith belief in their accuracy. *See Braymiller v. Lowe's Home Centers, Inc.*, 325 Fed. App'x 311, 315 (5th Cir. 2009) ( "[T]his Court cannot protect...employees from erroneous or even arbitrary personnel decisions, but only from decisions that are unlawfully motivated"); *Cervantez v. KMGP Services Co. Inc.*, 349 Fed. App'x. 4, (5th Cir. 2009) ("a fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith"). Ford introduces no evidence showing Holdman (or Jones) lacked a good-faith belief in the accuracy of the reports. Indeed, there was a complaint of a reckless driver in an Amethyst truck. Amethyst investigated and claims that it learned that Ford was the driver who had been traveling through Farmerville. The police report confirms this. Even if the police and anecdotal reports were incorrect, the errors do not undermine Amethyst's proffered reason for the discipline and termination because there is no evidence that Amethyst relied on the reports in bad faith.

Second, Ford attempts to show pretext by arguing that another employee, Bob, was ticketed for speeding, yet the company did not fire or discipline him.[2] Ford insists that Bob committed a safety violation while operating an Amethyst vehicle on the public roadway. Specifically, Bob was ticketed for speeding. Ford's knowledge of the incident came from a conversation she overheard on her truck's citizens-band radio.

However, Ford does not prove she and Bob were similarly situated. In *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009), the Fifth Circuit summarized the case law concerning "similarly situated" employees:

---

[2]Ford was unable to recall Bob's last name.

> We have considered the requirement for one employee to be similarly situated to another employee on multiple occasions. Employees with different supervisors, who work for different divisions of the company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment actions for dissimilar violations are not similarly situated.

574 F.3d at 259-60.

There is no evidence of who Bob worked for, what his work responsibility was, and when the alleged incident occurred. Further, the subject violations differ.

Additionally, Ford's knowledge that Bob was ticketed appears to stem from inadmissible hearsay, making it incompetent summary judgment evidence. Rule 56(e) of the Federal Rules of Civil Procedure governs the proof necessary to sustain a motion for summary judgment. Under that rule, inadmissible hearsay cannot be considered on a motion for summary judgment. *See U.S. v. $92,203.00 In U.S. Currency*, 537 F.3d 504, 508 (5th Cir. 2008); *Macuba v. Deboer*, 193 F.3d 1316, 1324-25 (11th Cir. 1999); *Bozeman v. Orum*, 199 F.Supp.2d 1216, 1222 (M.D. Ala. 2002). Ford claims to have learned that Bob was ticketed from statements she overheard on the radio. These statements were made out of court, and Ford seeks to use them for the truth of the matter asserted within them: they are classic examples of hearsay. Ford does not point the Court to any exception to the hearsay rule that might encompass these statements, nor is the Court aware of any such exception. Because inadmissible hearsay is incompetent summary judgment evidence, Ford cannot show that Amethyst treated a male employee more favorably than her.

Third, Ford points to crude comments by Jones and a co-worker to establish pretext. The Fifth Circuit applies different standards to analyze discriminatory remarks as direct or circumstantial evidence of discrimination. *See Paulissen v. MEI Technologies, Inc.*, 942 F.Supp.2d 658, 670-71

(S.D. Tex. 2013). A discriminatory remark is direct evidence of discrimination when it is: "(1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of-adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 ( 5th Cir. 2010) (quoting *Rubenstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400-01 (5th Cir. 2000)). However, when a remark is circumstantial evidence of pretext, the Fifth Circuit only asks whether (1) the remarks demonstrate discriminatory animus; and (2) whether the remarks were uttered by one who is either primarily responsible for the challenged decision or by a person with influence or leverage over the relevant decision maker. *Russell*, 235 F.3d at 226.

The record reveals only one statement which is tainted by discriminatory animus: Jones' statement that "we ain't having a woman to be a truck driver." [Doc. No. 15-2, Jiles Affidavit]. It is unclear when that statement was made. Thus, Ford cannot rely on this statement to demonstrate direct evidence of discrimination.[3] *See Manaway v. Medical Ctr. of Southeast Tex.*, 430 Fed. App'x 317, 323 (5th Cir. 2011) (finding insufficient evidence to overcome summary judgment when employee could not remember when remarks were made); *see also Wu v. Miss. St. Univ.,* 13-00002, 2014 WL 5799972 at *22 (N.D. Miss., Nov. 7, 2014) ("Here, Plaintiff has failed to specify a time frame for Marcus' alleged comment...[a]ccordingly, the court must conclude that it, standing alone, is a stray remark."); *Jones v. Cont. Cuisine, Inc.*, 353 F.Supp.2d 716, 721 (E.D. La. 2004) (finding racially derogatory remark made three weeks before firing was not proximate in time to the

---

[3]Although Ford does not argue that any comments amount to direct evidence of discrimination, the Court analyzes the remarks under the four-factor test in an abundance of caution.

employment decision).

Likewise, the stray remark fails to satisfy the more lenient two-factor test used to determine whether a remark is circumstantial evidence of pretext. While the remark displays Jones' alleged discriminatory animus, there is no evidence that Jones was principally responsible for the ultimate decision to fire Ford. It is undisputed, based on the admissible evidence, that Holdman made the decision to terminate the erratic driver. Ford does not argue that Jones had influence or leverage over Holdman's decision.[4]

For those reasons, Amethyst's Motion for Summary Judgment is GRANTED with respect to the discriminatory discharge claim, and that claim is DISMISSED WITH PREJUDICE.

### b. Failure to Promote

Amethyst has also moved for summary judgment on Ford's claim that Amethyst neglected to promote her to an unspecified position because of her gender. This claim cannot clear the *prima facie* stage of the analysis. A *prima facie* failure to promote case requires Ford to prove (1) she is a member of a protected class; (2) she was qualified for the promotion she sought; (3) she was denied the promotion; and (4) similarly situated employees outside the protected class were treated more favorably. *Rubinstein*, 218 F.3d at 399.

---

[4] Even if Jones exerted influence or leverage over the decision to terminate Ford, summary judgment would be appropriate because the only evidence of discriminatory animus is Jones' stray remark. *See Kelly v. Costco Wholesale Corp.,* 14-51168, 2015 WL 8527340 at *3 (5th Cir. 2015) ("[T]he Court has consistently found that stray remarks are not enough to demonstrate discriminatory animus..."); *Agoh,* 992 F.Supp.2d at 734 (citing *Palsota,* 342 F.3d at 577; ("After *Reeves*, however, so long as remarks are not the only evidence of pretext, they are probative of discriminatory intent"); *see also Ellini v. Ameriprise Fin., Inc.*, 881 F.Supp.2d 813, 823 (S.D. Tex. 2012) ("Importantly, however, discriminatory remarks are not probative if they are the *only* evidence of pretext").

Here, Ford admits she did not apply for a promotion. Thus, she cannot meet her burden at this stage in the analysis. *See Woodson v. Miss. Space Services/Computer Sciences*, 05-426, 2007 WL 2012799 at *5 (S.D. Miss. July 6, 2007) (dismissing failure to promote claim where plaintiff never applied for a promotion).

Therefore, Amethyst's Motion for Summary Judgment is GRANTED with respect to the failure to promote claim, and that claim is DISMISSED WITH PREJUDICE.

### c. *Failure to Train with Respect to Construction Equipment*

Amethyst next moves for summary judgment on Ford's claim that Amethyst did not provide her with further training with respect to construction equipment because of her gender. This claim fails because a failure to train is not an adverse employment action for purposes of a Title VII discrimination claim unless the denial of such training "tends to affect" the employee's employment status or benefits. *See Schackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407 (5th Cir. 1999); *see also Jones v. BP Amoco Chem. Co.*, No. H-10-1399, 2012 WL 1424986 at *5 (S.D. Tex. Apr. 23, 2012) ("[T]he Fifth Circuit has consistently refused to find that a denial of training can constitute an adverse employment action.") (citing *Roberson v. Game Stop/Babbage's*, 152 Fed. App'x. 356, 361 (5th Cir. 2005).

Ford does not show that the training she sought would influence her employment status or benefits. For purposes of Ford's discrimination claim, then, it is not an adverse employment action. Accordingly, Amethyst's Motion for Summary Judgment is GRANTED with respect to Ford's failure to train claim, and that claim is DISMISSED WITH PREJUDICE.

### d. *Prohibition from Operating Larger Trucks*

Amethyst next moves for summary judgment on Ford's claim that Amethyst refused to allow her to operate larger trucks because of her gender. Ford testifies that she made numerous requests to drive larger trucks when she was aware of a need. Amethyst denies that Ford was qualified to drive the larger trucks.

For purposes of a disparate treatment claim, the *prima facie* case requires Ford to show: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) others outside the class who were similarly situated were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001); *Rutherford v. Harris Cty.*, 197 F.3d 173, 183 (5th Cir. 1999); *Urbano v. Cont. Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir.), cert. denied, 525 U.S. 1000 (1998); *Nieto v. L&H Packaging Co.*, 108 F.3d 621, 623 n. 5 (5th Cir. 1997).

In the Fifth Circuit, with respect to Title VII *discrimination* claims, only ultimate employment decisions are actionable as adverse employment actions. This normally encompasses decisions such as "hiring, granting leave, discharging, promoting, or compensating." *McCoy*, 492 F.3d at 560; *Green* 284 F.3d at 657.

Ford does not explain how refusing to allow her to drive larger trucks is an adverse employment action for purposes of her discrimination claim. There is no evidence that driving larger trucks came with a pay increase or anything of the like, nor is there any evidence, for example, that she was denied a promotion based on her lack of experience with larger trucks.

Assuming, *arguendo*, that a refusal to allow Ford to drive large trucks constitutes an adverse employment action, she cannot establish a *prima facie* case as she offers no evidence that others

outside her class–similarly situated or not–were treated more favorably. Thus, Amethyst's Motion for Summary Judgment is GRANTED with respect to Ford's claim that she was discriminately denied the opportunity to drive larger trucks, and that claim is DISMISSED WITH PREJUDICE.

### e. *October 2011 Reprimand for Supplying False Information*

Amethyst next moves for summary judgment on Ford's claim that she was discriminately reprimanded in October 2011, for allegedly offering false information about an employee. Ford also cannot make out a *prima facie* case on this claim because she offers no evidence that any similarly situated persons outside her class escaped reprimand for similar actions. Therefore, Amethyst's Motion for Summary Judgment is GRANTED with respect to the October 2011 Reprimand claim, and that claim is DISMISSED WITH PREJUDICE.

### f. *Retaliation*

Amethyst moves for summary judgment on Ford's claim that Amethyst retaliated against her for engaging in protected activity. Ford asserts that, because she complained to her supervisors about perceived gender discrimination, Amethyst subjected her to numerous adverse employment actions. These adverse actions included (1) issuing her a written reprimand in October 2011, (2) denying her on-the-job training, (3) failing to consider her for promotional opportunities, (4) refusing to allow her to operate larger trucks, and (4) terminating her employment.

When a plaintiff alleging Title VII retaliation attempts to satisfy her case through circumstantial evidence, she must navigate the *McDonnell-Douglas* burden-shifting framework. *Jones v. Overnite Transp. Co.*, 212 Fed. App'x 268, 275 (5th Cir. 2006) (citing *Fabela v. Socorro I.S.D.*, 329 F.3d 409, 414 (5th Cir. 2003)). To make out a *prima facie* retaliation case, Ford must show (1) she engaged in an activity protected under Title VII; (2) an adverse employment action

occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *LeMaire v. State of La.*, 480 F.3d 383, 388 (5th Cir. 2007).

With respect to the first prong, Ford claims she complained to her supervisors about discrimination she suffered because of her gender. "An employee's informal complaint to an employer may constitute participation in a protected activity, provided that the complaint is in opposition to conduct that is unlawful and the employee holds a good faith, reasonable belief of the conduct's unlawfulness." *See Williams v. Racetrac Petroleum, Inc.*, 824 F.Supp.2d 723, 726 (M.D. La. 2010) (citing *Cavazos v. Springer*, 06-058, 2008 WL 2967066, at *7 (S.D. Tex. Aug. 8, 2008)). Treating men and women differently because of their respective genders generally violates Title VII. So, by complaining of such treatment, Ford engaged in protected activity. Thus, Ford meets her showing under the first prong.

Turning to the second prong, Ford lists a litany of adverse employment actions which Amethyst supposedly took against her for engaging in protected activity. Title VII's retaliation provision is not limited to ultimate employment actions such as hiring and firing. Rather, any action taken against an employee which would dissuade a reasonable worker from making or supporting a charge of discrimination offends the statute. *See Burlington Northern & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 67 (2006); *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). The actions about which Ford complains qualify as adverse employment actions for purposes of a retaliation claim. Thus, Ford meets her showing under the second prong.

Finally, the third prong of the *prima facie* retaliation requires Ford to establish a causal connection between her protected activity and the retaliatory actions. "The causal link required by the third prong does not rise to the level of a 'but for' standard." *Gee v. Principi*, 289 F.3d 342, 345

(5th Cir. 2002) (quoting *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002)). "In this Circuit, temporal proximity between the protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Com'rs*, 810 F.3d 940, 949 (5th Cir. 2015) (citing *Swanson v. Gen. Serv. Admin.*, 110 F.3d 1180, 1188, n. 3 ( 5th Cir. 1997)). Fifth Circuit precedent provides further guidance on the issue:

> the courts have [also] sketched an outline of indicia of causation in Title VII cases, because causation is difficult to prove. Employers rarely leave concrete evidence of their retaliatory purposes and motives. For example, in *Jenkins*, the court looked to three factors for guidance in determining causation. First, the court examined the employee's past disciplinary record. Second, the court investigated whether the employer followed its typical policy and procedures in terminating the employee. Third, it examined the temporal relationship between the employee's conduct and discharge...

*Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 507-09 (5th Cir. 1994).

Ford has failed to produce any evidence of a causal connection between her protected activity and the adverse employment actions other than her termination. Thus, Amethyst is entitled to summary judgment on Ford's retaliation claim based on those adverse employment actions.

However, Ford can establish a *prima facie* case of retaliation with respect to her termination. Ford testifies that she complained to Jones of disparate treatment. Jones was Ford's supervisor within one month of her termination. Thus, the adverse action came within a month, at the most, of the protected activity. Such temporal proximity allows Ford to clear the *prima facie* hurdle. *See Porter*, 810 F.3d at 949 (holding six weeks between protected activity and adverse employment action showed a causal connection).

After establishing a *prima facie* case of retaliation, the burden shifts to Amethyst to supply a legitimate, non-retaliatory reason for its action. If Amethyst succeeds, the burden shifts one last time to Ford to prove that the employer's proffered reason is pretext for the real retaliatory purpose.

Amethyst has supplied a sufficient reason for the action: the company had a good faith belief that Ford engaged in dangerous and reckless driving. For the same reasons outlined in the gender discrimination portion of the analysis, Ford has not produced sufficient evidence of pretext to overcome Amethyst's legitimate, non-retaliatory reason. Amethyst's Motion for Summary Judgment is GRANTED with respect to Ford's retaliation claims, and these claims are DISMISSED WITH PREJUDICE.

### III. CONCLUSION

For the foregoing reasons, Amethyst's Motion for Summary Judgment is GRANTED, and Ford's claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 4th day of April, 2016.

*(signature)*

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE